## UNION SANITARY MANUFACTURING COMPANY *v.* DAVIS.

[No. 9,661. Filed April 5, 1917.]

1. MASTER AND SERVANT.—*Workmen's Compensation Act.—Appeal from Award.—Assignment of Error.—Questions Presented.*—Under §61 of the Workmen's Compensation Act (Acts 1915 p. 392) as amended by the act of 1917 (Acts 1917 p. 154), concerning appeals from the Industrial Board, an assignment of error that an award is contrary to law is sufficient to present both the sufficiency of the facts found to sustain the award and of the evidence to sustain the finding of facts. p. 230.

2. MASTER AND SERVANT.—*Workmen's Compensation Act.—Action for an Award.—Burden of Proof.*—Under the Workmen's Compensation Act (Acts 1915 p. 392), in an action for an award the burden is on the plaintiff to prove that his injuries were caused by an accident arising out of and in the course of the employment. p. 231.

3. MASTER AND SERVANT.—*Workmen's Compensation Act.—Right to an Award.—Injuries Sustained in an Assault by Fellow Servant.*—Where plaintiff, a moulder, was assaulted during a quarrel over the non-repair of his metal ladle with a fellow servant, whose duties did not include such repair work, the injury was not one arising out of the employment within the meaning of the Workmen's Compensation Act, Acts 1915 p. 392. p. 231.

From the Industrial Board of Indiana.

Action by Frank L. Davis under the Workmen's Compensation Act against the Union Sanitary Manufacturing Company. From an award, the defendant appeals. *Reversed.*

*Thomas E. Kane* and *Ralph K. Kane,* for appellant.
*Cassius M. Gentry* and *Frank S. Campbell,* for appellee.

IBACH, P. J.—This is an appeal from the award of the full board. The facts sufficiently appear from the finding of facts filed with the record and are as follows:

"On the 21st day of October, 1915, the plaintiff was in the employment of the defendant at its factory in the city of Noblesville, Hamilton county, State of Indiana, in the capacity of a moulder at an average weekly wage of $12.00; that on said date plaintiff received a personal injury by an accident arising out of and in the course of his employment, resulting in a compound fracture of the olecranon process of the left elbow, and a slight scalp wound in the left temporal region, requiring two sutures; that the defendant, by and through its officers and agents, had actual knowledge of the plaintiff's injury on the day on which it occurred; that the plaintiff's injury, without any further surgical operation, has produced a 75% permanent impairment of the natural use and functions of the plaintiff's entire left arm; that by a proper surgical operation the degree of permanent impairment of the natural use and functions of said arm may be reduced to at least 50%; that the particular facts attending the plaintiff's injury are as follows: That the plaintiff, at the time of his injury, was working in the defendant's factory in the city of Noblesville, Indiana, as a moulder; that under the terms of his employment he was required to use, during the afternoon of each day, a ladle in carrying and depos-

iting in the proper moulds, moulten metal; that for such purpose he was provided with a ladle with a handle of the proper length to be suited to his particular use; that under the custom of the work in the defendant's factory the ladles were required to be relined with fire clay during the forenoon of each day following their use during the afternoon of the previous day; that the plaintiff had used his ladle on the afternoon of October 20th, 1915, and had placed it in the ladle room for relining; that on the afternoon of October 21st, 1915, the plaintiff went to the ladle room to procure his ladle and found that it had not been relined; that one Walter Crawford, an employe of the defendant, and one Rick McPherson, also an employe of the defendant, were charged with the special duty of relining the ladles of the moulders; that on the afternoon of October 21st 1915, when the plaintiff found that his ladle had not been relined, he made complaint thereof to Walter Crawford, and out of his complaint a heated argument arose between the plaintiff and the said Walter Crawford, taking place in language in common use in the defendant's factory; that as a result of said argument the said Walter Crawford committed an assault and battery at the time, upon the plaintiff, with an iron bar, inflicting the injuries which have heretofore been described; that from the evidence in this case the full board is unable to find that the assault and battery upon the plaintiff and his injuries were produced by the wilful misconduct of the plaintiff or that he was the aggressor in the encounter which resulted in his injury; that this proceeding has been defended without just ground therefor."

In addition to the foregoing facts the uncontradicted evidence shows that appellant had a foreman and assistant foreman on duty at its plant on the afternoon of the day of the injury and that it was a part of their

duties to hear complaints on the part of the men and to rectify their troubles; that it was the duty of appellee when he found his ladle was not properly lined to report it to the foreman. Appellee did not complain to either the foreman or assistant foreman, but a short time prior to his injury did complain to a man named McPherson whose duty it was to reline hand-ladles, the kind appellee was using. Appellee as a witness on his own behalf testified that it was the duty of the foreman to see that everything was run under the foundry laws and to see that the work was done properly by the men; that if anything was wrong in the shop the men went to the foreman with their complaints; that the proper place for him to have gone with the complaint that his ladle was not lined, or was improperly lined, was to the foreman, but that he met Crawford and got into a controversy with him over his ladle not being lined; that he started the controversy. The uncontradicted evidence further shows that it was not a part of Crawford's duties to reline hand-ladles, but that this part of the work was done by McPherson. Crawford was not in the ladle room at the time the controversy arose but was then engaged in pouring metal near the cupola; that the work of relining ladles was done in the forenoon and the injury occurred in the afternoon. Crawford was a very quiet fellow and never had very much to say and got along well with the men.

One of the errors assigned and relied on for reversal is that " the award of the Industrial Board of Indiana in this cause is contrary to law." Under §61

1. of the Workmen's Compensation Act (Acts 1915 p. 392) as amended by the act of 1917 (Acts 1917 p. 154) this assignment is sufficient to present both the sufficiency of the facts found to sustain the award and the sufficiency of the evidence to sustain the finding of facts.

Section 2 of the original act provides: "From and after the taking effect of this act, every employer and every employee, except as herein stated, shall be presumed to have accepted the provisions of this act respectively to pay and accept compensation for *personal injury or death by accident arising out of and in the course of the employment, and shall be bound thereby;* * * *." (Our italics).

It is the contention of appellant that the finding does not show that the injury of the appellee arose "out of and in the course of the employment" and therefore the award is contrary to law. While the question here presented is one of first impression in this State, the language italicized is identical with that of a number of statutes of other states and with that of the British compensation acts from which many provisions of the earlier statutes in America were taken. A reading of the decisions in such foreign jurisdictions will therefore be helpful in determining the question now before us.

The burden of furnishing evidence from which the inference could be reasonably drawn that plaintiff's injuries were caused by an "accident arising out of and in the course of the employment" within the meaning of the Workmen's Compensation Act, rested upon plaintiff. *Dragovich* v. *Iroquois Iron Co.* (1915), 269 Ill. 478, 109 N. E. 999; *Savage's Case* (1915), 222 Mass. 205, 110 N. E. 283; *Von Ette's Case* (1916), 223 Mass. 56, 111 N. E. 696, L. R. A. 1916 D 641; *Ohio Bldg. Vault Co.* v. *Industrial Board* (1917), 277 Ill. 96, 115 N. E. 149.

It has been held that an injury arises "out of" the employment "when it is something the risk of which might have been contemplated by a reasonable person, when entering the employment; as incidental to it. * * * A risk may be incidental

to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected with the employment owing to the special nature of the employment;" and that an injury arises "in the course of the employment" if it "occurs while the employe is doing what a man so employed may reasonably do within a time during which he is employed, and at a place where he may reasonably be during that time." *Bryant* v. *Fissell* (1913), 84 N. J. Law 72, 86 Atl. 458, 3 N. C. C. A. 585.

In the case of *Ohio Bldg. Vault Co.* v. *Industrial Board, supra,* a night watchman was assaulted and killed while on duty, and it was contended that the death did not arise out of the employment. In disposing of the question there presented the court said: "We are not intending to hold that any assault on an employe while in the discharge of his duties arises out of his employment. Such an assault only arises out of his employment in a case where the duties of the employe are such as are likely to cause him to have to deal with persons who in the nature of things are liable to attack him."

In other cases it is held that an injury arises "out of" the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury. Under this test, if the injury can be seen to have followed as a natural incident of the work and to have been contemplated by a reasonable person, familiar with the whole situation, as a result of the exposure occasioned by the nature of the employment then it arises "out of" the employment. But it excludes an injury which cannot fairly be traced to the employment as a contributing proximate cause, and

which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work, and not common to the neighborhood. It must be incidental to the character of the business, and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence. *McNicol's Case* (1913), 215 Mass. 497, 102 N. E. 697, L. R. A. 1916 A 306; *Coronado Beach Co.* v. *Pillsbury* (1916), 172 Cal. 682, 158 Pac. 212, L. R. A. 1916 F 1164; *Federal Rubber Mfg. Co.* v. *Havolic* (1916), 162 Wis. 341, 156 N. W. 143, L. R. A. 1916 D 968; *Mitchinson* v. *Day Bros.* (1913), 6 B. W. C. C. 190 C. A.; *Fitzgerald* v. *Clark & Son* (1908), L. R. 2 K. B. 796, 77 L. J. K. B. 1018; *Pierce* v. *Boyer-Van Kuren Lumber, etc., Co.* (1916), 99 Neb. 321, 156 N. W. 509, L. R. A. 1916 D. 970; *Walther* v. *American Paper Co.* (1916), 89 N. J. Law 732, 98 Atl. 264. 1 Honnold, Workmen's Compensation §§101, 116. In the authority last cited, the author says: "The words 'out of' point to the origin and cause of the accident or injury; the words 'in course of' to the time, place and circumstances under which the accident or injury takes place. * * * The character or quality of the accident as conveyed by the words 'out of' involves the idea that the accident is in some sense due to the employment. It must result from a risk reasonably incident to the employment."

At most appellee and Crawford were fellow servants. There is no finding that it was a part of appellee's duties under his employment to make complaint to Crawford because of his ladle not being relined and no facts are found from which such an inference can fairly

and reasonably be drawn. Applying the principles of law above announced to the facts of this case the injury did not arise "out of" the employment as such phrase is used in the act. Stress seems to have been given to the mere fact of employment which is unwarranted by the law. In other words, it appears to have been the conclusion of the board that "but for the employment, there would have been no quarrel, and, without the quarrel, the injury would not have been inflicted." "'It is not enough for the applicant to say, "The accident would not have happened if I had not been engaged in that employment, and if I had not been in that particular place?" He must go further and must say, "The accident arose because of something I was doing in the course of my employment, or because I was exposed by the nature of my employment to some peculiar danger.'" *Shaw* v. *MacFarlane* (1914), 8 B. W. C. C. 382, 390, 391. To the same effect, see *Ely* v. *M. S. Brooks & Son,* 1 Conn. Comp. Dec. 390 (superior court reversing commissioner); *Madden's Case* (1916), 222 Mass. 487, 494, 111 N. E. 379, 382, L. R. A. 1916 D 1000. In the case last cited the court said: "The act is not a substitute for disability or old age pensions. It cannot be strained to include that kind of relief. Its ultimate purpose merely is to treat the cost of personal injuries incidental to the employment as a part of the costs of the business. It does not afford compensation for injuries or misfortunes which merely are contemporaneous or coincident with the employment or collateral to it. * * * The relief is so new that the tendency may be to inquire only as to the employment and the injury and assume that these two factors constitute ground for compensation. But the essential connecting link of direct causal connection between the personal injury and the employment must be established before the act becomes operative. The

personal injury must be the result of the employment and flow from it as the inducing proximate cause. The rational mind must be able to trace the resultant personal injury to a proximate cause set in motion by the employment and not by some other agency, or there can be no recovery." As tending to support our conclusion on the question presented, see also: *In re Krupyak,* Ohio Ind. Comm. No. 95747, July 8, 1915, 11 N. C. C. A. note, 237; *In re Luty,* Ohio Ind. Comm. No. 95220, Oct. 5, 1915, 11 N. C. C. A. note, 239; *Pease* v. *Employers', etc., Assur. Corp.,* Mass. Workm. Comp. Cas. No. 2202, Dec. 8, 1915, 11 N. C. C. A. note, 239, 240; *In re Chaney,* Ohio Ind. Comm. No. 118908, Oct. 29, 1915, 11 N. C. C. A. note, 242, 243; *In re Burt,* Ohio Ind. Comm. No. 82519, July 6, 1915, 11 N. C. C. A. note, 244. Judgment reversed.

NOTE.—Reported in 115 N. E. 697. Workmen's compensation: injuries "arising out of and in the course of" the employment, L. R. A. 1916A 40, 232; Ann. Cas. 1914B 498, 1916B 1293.